## No. 11,107.

### JOHN CALDER & CO., AND DAVID R. CALDER, INDIVIDUALLY, VS. THEIR CREDITORS.

#### ON RULE OF CONTEMPT.

The facts disclosed by the record being, that a citizen of the State of Tennessee commenced suit in the United States Circuit Court in the State of Louisiana, against a citizen of the latter, and procured the seizure by executory process of certain mortgaged property; that certain other mortgage creditors of same defendant, residing in Louisiana, intervened, setting up concurrent mortgage rights thereon; and that subsequently, the seized mortgage debtor made a cession and surrender to his creditors generally, including the mortgaged premises among the assets surrendered. *Held*, 'that the *continuation*, by the intervening Louisiana creditors of the insolvent, of their claim for participation in the proceeds of sale in the custody of the Federal Court, was not, in effect, a contempt of the stay-order of the State court having jurisdiction of the insolvency proceedings and estate.

Under such a state of facts the Louisiana creditors were without other alternative than the one they adopted, for had they not continued the prosecution of their demands in the court having possession of the *res*, and complete jurisdiction over it, they might have been altogether lost.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Henry L. Lazarus* and *Horace E. Upton* for the Syndics, Plaintiffs on Rule and Appellees.

*Carroll & Carroll* for Crescent Insurance Co., Defendants on Rule and Appellants:

It is no part of a syndic's right or duty to represent a Louisiana creditor of the insolvent, claiming under a mortgage note granted by the insolvent, in a contest in a foreign jurisdiction over the proceeds of the sale of the mortgaged property between Louisiana and foreign creditors. 14 An. 475, and cases cited below.

A fund in the possession of the Federal Court rising from the judicial sale of property, rightly provoked, must be distributed by that court directly among the parties entitled to share in it. The fact that the owner of the property afterward goes into insolvency is no bar to a Louisiana creditor pressing his claim to part thereof upon a mortgage note granted by the insolvent, and gives no power to the syndic to represent such creditor. Such fund is in the nature of a pledge for the payment of privileged claims thereon, and the syndic is entitled to the residuum. 38 An. 863; 40 An. 37.

A syndic represents the mass of creditors and has no power to represent a particular creditor or class of creditors. Where the mass of creditors has no interest, the syndic can not interfere. 1 An. 475; 1 R. 276; 12 An. 775; 1 An. 24.

A syndic, having gone into the Federal Court and prayed for relief in a matter there pending in which Louisiana creditors of the insolvent are parties, is estopped, after submitting the matter to that court, from seeking substantially the same relief against the Louisiana creditors in the State courts.

Calder & Co., and Calder, Individually, vs. Creditors.

A Louisiana creditor can not be restrained by a State court having jurisdiction of an insolvency proceeding from establishing his privileged claim upon a fund in the custody of a Federal Court, arising from the sale of the insolvent's property. The syndic has no right to represent such creditors in the Federal Court, and can only represent the mass of creditors for such interest as, they may have. 14 An. 475.

Such fund is in the nature of a pledge for the payment of privileged claims thereon, and the syndic is only entitled to the residuum. For the syndic to represent privileged creditors, whether citizens of Louisiana or not, would be antagonistic to the interests of the mass of creditors, and beyond the power of the syndic. 38 An. 863; 40 An. 37.

In a contest in a foreign jurisdiction over the fund arising from the sale by a competent court of a plantation belonging to the insolvent, it is no part of the right or duty of the syndic of the insolvent to represent a Louisiana creditor, who claims a privilege upon the fund by reason of holding a note bearing a mortgage upon the plantation, especially when foreign creditors, not subject to Louisiana jurisdiction, and not parties to the insolvency proceedings, claim priority.

*Browne & Choate* for Home Insurance Co., on the same side.

The opinion of the court was delivered by

WATKINS, J. This controversy arises upon a rule taken on the part of the provisional syndics of the insolvents, John Calder & Co., and D. R. Calder, individually, against two of the creditors of said insolvents, to-wit: Home Insurance Company and Crescent Insurance Company, to compel them to show cause why they should not be sentenced for contempt for a violation of the order of court staying all proceedings against the person and property of said insolvents, that was granted by the judge in accepting their surrender for the benefit of their creditors, generally; the specific complaint of the provisional syndics being that said insurance companies, by certain judicial proceedings in the United States Circuit Court, were attempting to subject property of the insolvents to the payment of their debts to the prejudice of other creditors of said insolvents, in direct violation of the stay-order, and thus avoid and evade its effect.

Said companies were ordered to show cause why they should not abate or cease to further prosecute their proceedings in the Federal Court, and to assert their rights, if any, in the insolvency proceedings.

To this rule the answers of the insurance companies were, substantially, that they were *bona fide* holders for value of one note

each, of the defendant, D. R. Calder, for $10,000, respectively, which were secured by special mortgages upon his Aragon plantation, in the parish of Terrebonne. That one Mrs. L. W. Goode, a citizen of the State of Tennessee, had *previously obtained a seizure of the mortgaged property* under executory proceedings in the United States Circuit Court, and that they had intervened therein *prior to the cession* and surrender of the insolvents, for the protection and enforcement of their rights. That a mortgagee of said Calder, *inferior in rank to them*, and who was a citizen of the State of Illinois, subsequently intervened in the executory proceedings of Mrs. Goode, and asserted claim upon the mortgaged property *prior in rank* to their own, thus *necessitating the continuation of their own, in order to protect their rights*. That for these reasons they were acting in the necessary defence of their rights in a court of justice, possessed of competent jurisdiction of the *res* on which their rights and privileges were founded; and that the action therein was prior in date of commencement to the cession and surrender of their debtor, and that its continuance in said court after the cession was necessary in order to protect themselves against an adverse judgment in favor of the subsequently intervening creditor.

That they did not intend any disrespect to the order of the court staying all proceedings against the person or property of the insolvent, and for that reason should be discharged. They further expressly plead and aver that said provisional syndics appeared in the United States Circuit Court and filed a bill in equity, wherein they sought to restrain and enjoin Mrs. Goode from selling the mortgaged property on the ground that her mortgage had become perempted and extinguished, and that the court had no jurisdiction *in rem* for that reason; and that the Federal court had no jurisdiction *in personam* over them, as corporations domiciled in the State of the defendant, hence the *res* became properly subjected to the jurisdiction of the insolvent court. That said provisional syndics were unsuccessful in that suit, the court holding that notwithstanding Mrs. Goode's mortgage had become perempted by reason of its *non-*reinscription, her vendor's lien on the property remained intact, and therefore its grasp on the *res* could not be released; and that, maintaining jurisdiction of the *res*, the intervenors were entitled to *remain* in that court and contest *there* the relative rank of the privileges of the seizing creditors and subsequent intervenor—they being

citizens of States different from that of the insolvent and themselves—notwithstanding said intervening insurance companies were disentitled to *original* process of seizure and sale against the mortgaged property, on account of their domicil being in the State of the insolvent.

On the trial of the rule the intervenors were found and adjudged guilty of contempt, and it was made absolute, and they have appealed —the judgment sentencing them to abate and discontinue their proceedings in the Federal court, and as citizens of this State to submit themselves to the order of court rendered in the insolvent proceedings.

The record discloses that Mrs. Goode commenced her executory proceedings in the United States Circuit Court on the 9th of February, 1892—she being a citizen of the State of Tennessee—and obtained orders of that court for the sequestration of the mortgaged property, and also for its seizure and sale, and thereunder the marshal made a seizure, subsequently, and took the mortgaged property into his official custody.

On the 10th and 12th of same month and year, respectively, the insurance companies *intervened in Mrs. Goode's executory proceedings* and obtained separate and independent *orders* for the issuance of writs of seizure and sale—said orders being prior in date to the *actual seizure* of the mortgaged property under the writ of Mrs. Goode, and also prior in date to that of the cession of the insolvent debtor.

There is nothing in the record to *precisely* show at what date the seizure of the mortgaged property was effected under the writ of seizure and sale of Mrs. Goode; but counsel for the insolvent admit that the property was seized under the .writ of sequestration *antecedently to the cession* of the insolvent on the 15th of February, 1892.

The intervention of Schwabacher occurred in March subsequently.

Any doubt that may otherwise exist, however, as to the priority of the seizure over the cession is dispelled by the judgment and decree pronounced by the United States Circuit Court in the case of William Henderson et als., Provisional Syndics, vs. Mrs. Goode, 46 Federal Reporter, 887, it having been provoked by the syndics themselves, and is necessarily binding and conclusive upon them.

In that case the court, after stating the facts substantially as above recited, held as follows, viz.:

"As concerns Mrs. Goode, the citizenship of herself and Calder is

such that the court has jurisdiction over the case, and the *res*—the mortgaged premises. * * * * *

" So far as the Home and the Crescent Insurance Companies are concerned they are citizens of this State, and therefore of the same State as Calder, but they are citizens of another State than that of Mrs. Goode. They could not have instituted the suit in the United States Circuit Court, nor can they have original process. But the court being in possession of the *res*, in a proceeding over which it had jurisdiction, they have properly intervened to assert their rights in the *res*. In this respect they are like people claiming in an admiralty court liens which spring from State statutes. They can not bring the *res* into court, but may assert their privileges after it has been brought there by those having liens.

" The injunction is refused so far as relates to Mrs. Goode, Schwabacher and the marshal, and allowed so far as relates to the independent executory proceedings of the Home and Crescent Insurance Companies, *leaving them full right to enforce whatever right they have as intervenors in the case.*"

The principle involved in that case is that the court having acquired jurisdiction of the *res*, by virtue of the marshal's seizure and the custody of the law, under the writs of sequestration and seizure and sale, and of the creditor personally, therefore that court had jurisdiction to determine as between the intervening insurance companies and Mrs. Goode and Schwabacher, citizens of States other than that of the insurance companies, their relative rights in the *res*, and, particularly, the rank of their respective mortgages, notwithstanding the court had no jurisdiction of the intervenors *in personam*.

There can be no doubt of the correctness of that proposition of law, because a Federal court is in no way bound by insolvency proceedings in a State court unless the latter has acquired the physical custody of the estate of the insolvent *prior to seizure thereof* under process from the former.

Under the state of facts presented we are of opinion that the insurance companies had no other alternative than the one they chose to pursue. Their interventions were filed antecedent to the surrender of Calder, in a Federal court that possessed jurisdiction of the cause in which same were filed. Their demands were founded on special mortgages on property upon which the court had obtained jurisdiction antecedent to the cession of Calder; and the principal question for the court to determine was the rank and privilege, re-

spectively, of the different mortgages on the proceeds of sale then in its custody—especially that of the intervenors and Schwabacher.

During the pendency of these proceedings the provisional syndics inaugurated an independent suit in that court, seeking to avoid their effect; but the decision of the court was against them.

In our opinion the insurance companies have thoroughly purged themselves of contempt, and that the judgment appealed from is erroneous and must be reversed.

Counsel for the insolvent place reliance upon our opinion in Hayden Syndic vs. Yale & Bowling, recently decided, as controlling the decision of this case; but we are of a different view. The principles announced in that case are not applicable to the instant case. Yale & Bowling commenced proceedings in a court of the State of Mississippi, and attached property of the insolvent Hayden therein *after* he had made a cession of it in a Louisiana court, and, by an assignment of the judgment, subsequently obtained, to a citizen of Mississippi, they defeated the jurisdiction of the Louisiana court over the property and its proceeds. We held Yale & Bowling bound to account to the syndic for the proceeds and avails of the property.

It may be equally true that the insurance companies would be compelled, in different proceedings, to account to the syndic of Calder for the portion of the assets coming to them, respectively, from the *res* in the marshal's hands; but we think it clear that, under the facts of this case, they are guilty of no contempt of the stay-order of the insolvency in *continuing* the proceedings they had previously instituted, as the necessary and *only* means in their power of protecting their rights.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered that the contempt proceedings be abated and the rule discharged at the cost of the insolvent estate in both courts.